# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,         )
                                   )
                                   )
                                 )   Case No. 1305013969
              v.                  )
                                 )
LEROY BOND               )
                                 )
       Defendant.        )

Submitted: April 23, 2014
Decided: May 23, 2014

Eric Zubrow, Esq.
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE 19801
   *Attorney for the State*

Jonathan A. Layton
Layton & Associates, P.A.
1823 West 16th Street
Wilmington, DE 19806
   *Attorney for Defendant*

## DECISION AFTER TRIAL

**RENNIE, J.**

On May 17, 2013, Leroy Bond (hereinafter "Defendant") was charged with Assault Third Degree in violation of 11 *Del. C.* § 611. Trial was held on April 23, 2014. This is the Court's decision after considering the evidence and arguments presented at trial.

### FACTUAL BACKGROUND

This case involves a physical altercation between Defendant and Oscar Johnson (hereinafter "Johnson") where Defendant allegedly struck Johnson in the head with a table leg resulting in physical injury to Johnson. At trial, the State called three witnesses: 1) Valerie Fogelman (hereinafter "Fogelman"), Defendant's former girlfriend; 2) Johnson; and 3) Corporal Matthew Reiss (hereinafter "Corp. Reiss") of the City of Wilmington police, who investigated the matter.

### FOGELMAN'S TESTIMONY

Fogelman testified that on May 17, 2013, she was with Defendant at his rooming house in Wilmington, Delaware. After waking up around noon, she and Defendant started arguing. Fogelman testified that she was scared during the argument, so she yelled downstairs asking for assistance. When she received no response, she ran downstairs to get a phone to call the police. Johnson provided her with a phone, and she called the police department, which dispatched an officer to the rooming house. After the initial officer departed, Fogelman left the house.

### JOHNSON'S TESTIMONY

Johnson testified that on May 17, 2013, he was watching television and drinking brandy with Bill Murray (hereinafter "Murray"), another resident of the rooming house, when he heard Defendant and Fogelman arguing. Fogelman then ran downstairs, requested the use of Johnson's phone, and called the police. The police arrived, talked to Defendant, and the police

2

and Defendant left the building. Johnson testified that Defendant returned to the house and began to accuse and threaten him. Johnson responded to Defendant's accusations by stating that he had no involvement in the dispute between Defendant and Fogelman, but simply allowed Fogelman to use his phone. Johnson testified that Defendant took the phone sharing personally, and Defendant charged at him in a threatening manner. Johnson further testified that he knew that Defendant carried a knife, so he grabbed a table leg to protect himself. The two then began "tousling" for control of the leg, which resulted in broken glass on the floor. Johnson slipped and fell on the broken glass, which caused him to drop the table leg. Defendant picked up the table leg and stood over Johnson while Johnson was on the floor. Johnson testified that Defendant swung the leg, which hit Johnson on the arm. Johnson attempted to get up, but Defendant then hit him on the shoulder. Johnson then testified that the third hit, and any subsequent hits, were to his head while he was still on the floor.[1] Johnson further testified that he called for an ambulance, and that both the police and paramedics arrived on the scene.[2] Johnson ultimately received eight (8) staples in his head, and was required to undergo an MRI to determine if he suffered from any internal damage.

## CORPORAL REISS'S TESTIMONY

Corp. Reiss testified that on May 17, 2013, around 4:45 p.m., he received a call about an assault. When he arrived at the scene, he first interviewed Johnson. After paramedics took Johnson to the hospital, Corp. Reiss encountered Defendant. Corp. Reiss testified that Defendant, unsolicited, stated that he was involved in a fight with Johnson. Defendant further

---

[1] Johnson testified that he was hit five times, but Corp. Reiss testified that Johnson only told him about a strike to his head, and that he was unaware of hits to Johnson's arm and shoulder. Under the circumstances present at the time of the incident, the Court does not ascribe any dishonesty to Johnson's decision to focus solely on the hit to his head which was bleeding profusely.

[2] Johnson testified that initially, the paramedics planned to take him to Wilmington Hospital, but due to the severity of the injuries he sustained, the paramedics believed he may have had extensive damage, and thus transported him to Christiana hospital.

3

stated that he was enraged over the altercation, and he hit Johnson once with a table leg while attempting to defend himself from Johnson.

### DEFENDANT'S TESTIMONY

After the State rested its case-in-chief, the Defendant testified at trial. He testified that on May 17, 2013, he woke up around 10 a.m. and notified Fogelman, who was in bed with him, that he was ending their romantic relationship. Thereafter, the two engaged in an altercation which resulted in Fogelman leaving the house. Following Fogelman's departure from the house, Defendant testified that he sat downstairs with Johnson and Murray, who were smoking marijuana and drinking at that time. Defendant testified that Fogelman returned to the house, and Johnson let her in to use the bathroom. Defendant testified that he went upstairs because he was suspicious about the length of time Fogelman remained in the bathroom. Shortly thereafter an altercation ensued between Defendant and Fogelmen. Fogelman ran downstairs and used Johnson's phone to call the police.

After the police conducted their investigation and left, Defendant questioned Johnson about why Johnson had given Fogelman the phone. Defendant testified that Johnson became upset at the questioning, and grabbed a table leg. Defendant further testified that after Johnson grabbed the table leg, Defendant picked up the chair upon which he was sitting to protect himself. Defendant stated that he intended to corral Johnson into a corner to disable him. After Defendant isolated Johnson in a corner, Defendant testified that he dropped the chair to grab the table leg, and the two proceeded to wrestle around the room to gain control of the table leg. As a result of their altercation, their drinking glasses shattered, which caused Johnson to slip and fall to the ground. Defendant testified that he did not force Johnson to the ground, and did not strike

4

Johnson, but that Johnson slipped on the glass. Defendant stated that after he fell, Johnson kept jumping up to continue the fight. Defendant did not testify about how Johnson got injured.

## DISCUSSION

In a criminal matter, the State has the burden to prove every element of the charged offense beyond a reasonable doubt.[3] "Reasonable doubt does not mean a vague, speculative doubt, nor a mere possible doubt, but a substantial doubt; it is such a doubt as intelligent, reasonable and impartial men may honestly entertain after a careful and conscientious consideration of the evidence in the case."[4]

### ASSAULT THIRD DEGREE

To find an individual guilty of assault third degree pursuant to 11 *Del. C.* § 611, the State must prove, beyond a reasonable doubt, that either "(1) The person intentionally or recklessly cause[d] physical injury to another person; or (2) With criminal negligence the person causes physical injury to another person by means of a deadly weapon or a dangerous instrument." 11 *Del. C.* § 231(a) defines 'intentionally' as:

> A person acts 'intentionally' with respect to an element of an offense when: (1) If the element involves the nature of the person's conduct or as a result thereof, it is the person's conscious object engaging conduct of that nature or to cause that result and; (2) If the element involves the intended circumstances, the person is aware of the existence of such circumstances or believes or hopes they exist.

"Physical injury" is defined as "impairment of physical condition or substantial pain."[5] Such physical injury may include cuts and gashes that continue to bleed even after police have arrived on a scene,[6] and other injuries that result in "a reduction in one's ability to use the body or a

---

[3] *State v. Bennett*, 2006 WL 2615156 (Del. Com. Pl. Aug. 31, 2006) (citing *State v, Matushefske*, 215 A.2d 443 (Del. Super. 1965)).
[4] *Matushefske*, 215 A.2d at 449.
[5] 11 *Del. C.* § 222(24)
[6] *Harris v. State*, 965 A.2d 691 (Del. 2009)(citing *State v. Higgins*, 165 Or.App. 442, 998 P.2d 222, 224 (2000)).

bodily organ."[7] However, minor injuries, such as scrapes, that produce no pain and do not inhibit an individual's ability to use the bodily area, do not constitute physical injury.[8]

The testimony at trial demonstrates that there was a fight between Johnson and Defendant which arose after Johnson allowed Fogelman to use his phone to call the police. Both Johnson and Defendant agreed that Johnson was the first one to pick up the table leg. In the struggle to gain control of the table leg, the two men moved about the room, bumping into furniture and causing glass to break on the floor. Johnson slipped and fell. It is at this point in the story that the parties' testimony diverged. Johnson testified that when he fell, he lost possession of the table leg. At that point, Defendant picked up the table leg, stood above Johnson, and struck him on his arm, shoulder, and head with the table leg. Conversely, Defendant testified that he could not recall whether Johnson was injured prior to his fall, but that after his slip and fall, Johnson kept jumping up to continue the altercation. Defendant testified that he did not strike Johnson with the table leg.

The Court finds Johnson's testimony to be more credible with respect to the description of the fight. Defendant provided the Court with testimony inconsistent to that of Corp. Reiss and Johnson. The credible testimony of Corp. Reiss indicates that Defendant told Corp. Reiss that he became enraged and struck Johnson with the table leg. Further, at the time of trial, Johnson was 66 years old and Defendant was 51 years old. After considering Johnson's age and his frailty which was visible at trial, the Court finds it incredible, as Defendant testified, that Johnson could repeatedly jump up after slipping and falling on broken glass. Because the Court finds Johnson's version of the events to be more believable, the Court accepts his testimony, combined with the

---

[7] Id.
[8] Harris, 965 A.2d at 694.

6

testimony of Corp. Reiss, and concludes that Defendant struck Johnson in the head, resulting in an injury requiring eight (8) staples.

From the testimony, the Court finds that Defendant acted intentionally when he struck Johnson. Defendant made a conscious effort to strike an unarmed Johnson as he attempted to get up from the ground. The injuries Johnson sustained are physical injuries as defined in 11 *Del. C.* § 222(24). Johnson bled profusely after the injury and the size and depth of the injury necessitated the use of eight (8) staples to mend the injury. Such injury is beyond a minor scrape that does not inhibit an individual's ability to use a bodily area. The Court thus finds that the State has met its burden of establishing the elements necessary to prove the charge of Assault in the Third Degree. However, Defendant contends that his actions were the result of self-defense. The Court shall consider this argument as an affirmative defense.

## SELF-DEFENSE

Under 11 *Del. C.* § 464, "[t]he use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion." Under Delaware law, the self-defense statute is applicable only if the individual employing self-defense tactics is doing so at the time he is confronted with an immediate threat to his person.[9] After the threat of injury to the defendant has passed, for example, the aggressor has been subdued, the immediate threat of bodily harm no longer exists, and thus the defense will not be applied to future acts of force against the aggressor.[10]

---

[9] 11 *Del. C.* § 464; *Warrington v. State*, 840 A.2d 590, 593 (Del. 2003).

[10] *Warrington*, 840 A.2d at 593. The Delaware Supreme Court found that a jury instruction consisting of, "…if a person is initially justified in defending himself, but then knows that the danger to him has passed then the subsequent use of deadly force is not justified" sufficiently defined Delaware's interpretation of the self-defense statute, and was an appropriate jury instruction. The Court noted, "[n]othing in the statutory language or Delaware case law supports defendants' contention that what begins as self defense can be turned into a license to kill." *Id.*

7

Defendant testified that he grabbed the chair as a form of self-defense to protect himself from Johnson, who was in possession of the table leg. After Johnson slipped and fell on the broken glass, however, he lost possession of the table leg, and any threat of physical injury to Defendant dissipated. The Court finds that Johnson, due in part to his age and physical frailty, could not be considered a threat to a chair-wielding Defendant who was standing over him. Thus, Defendant cannot use self-defense as a basis to strike Johnson after he fell to the floor. The Court therefore finds that Defendant acted intentionally by striking Johnson in the head with the table leg when he was on the floor and no longer a threat, and that his actions will not be covered by the self-defense statute.[11]

## CONCLUSION

The evidence in the record adduced at trial is that on May 17, 2013, Defendant and Johnson engaged in an argument that turned into a physical altercation. After Johnson slipped and fell on the broken glass and lost possession of the table leg, Defendant picked up the table leg, stood over Johnson, and used the leg to hit Johnson in the head. At the conclusion of the events, Johnson was significantly injured and required medical attention, while Defendant walked away unscathed.

---

[11] Defendant also raises the defense of "consent" as a basis for acquittal. Specifically, he contends that both parties consented to engage in the physical altercation. Under 11 *Del. C.* § 452, "it is a defense that the victim consented to the infliction of physical injury of the kind done or threatened, provided that: (1) The physical injury done or threatened by the conduct consented to is not serious physical injury; or (2) The physical injury done or threatened is a reasonably foreseeable hazard of joint participation in any concerted activity, athletic contest or sport not prohibited by law." Additionally, under 11 *Del. C.* § 453(4), a consent defense may not be used if a victim is involved in an altercation out of "force, duress or deception." Under the facts laid out through Johnson's testimony, which the Court finds credible, Johnson picked up the table leg to defend against Defendant, who was charging at him in a threatening manner. Johnson did not agree to fight Defendant, but was forced to engage as a response to Defendant's threatening behavior. In addition, the physical altercation was not a concerted activity or sport. Thus, this statute does not support Defendant's purported defense of "consent." *See Potts v. State*, 919 A.2d 562 (Del. 2007) (finding that consent exists in a situation where both parties agree to fight "one-on-one," with an expectation of physical contact, but does not exist where the terms of the consented activity are altered, such as when a third party unknowingly gets involved or one party produces a weapon for use).

8

Based on the evidence in the record, the Court finds it implausible that Johnson, who had no reason to start a fight with Defendant, picked up a table leg and charged at Defendant. Johnson's testimony that he utilized the table leg as protection against an enraged Defendant, however, seems more plausible after considering and weighing all of the testimony adduced at trial. The Court, after observing Johnson's physical condition at trial, and taking into account his testimony, finds that Johnson could not, as Defendant testified, repeatedly jump up from the glass-covered ground to continue a physical fight with Defendant.

Further, the Court finds that Defendant cannot reasonably sustain his self-defense argument. The Court does not find Defendant's version of the events to be credible, and thus finds that at the time Defendant struck Johnson in the head, Johnson had been subdued to a point where he no longer served as an immediate threat to Defendant. The Court also finds that Johnson did not consent to physically fight Defendant.

Accordingly, the State has met its burden to prove beyond a reasonable doubt that Defendant committed Assault Third Degree pursuant to 11 *Del. C.* § 611. Therefore, the Court finds Defendant Leroy Bond **GUILTY** of Criminal Assault in the Third Degree. This Judicial Officer shall retain jurisdiction of this case and will schedule it forthwith for sentencing.

**IT IS SO ORDERED THIS 23rd DAY OF MAY, 2014.**

The Honorable Sheldon K. Rennie,
Judge

9